UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

# CIVIL MINUTES - GENERAL

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| CONNIE LEE | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** (IN CHAMBERS) - PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO WRIT OF MANDATE CLAIM (Dkt. 59, Filed October 28, 2016)

(IN CHAMBERS) - EX PARTE APPLICATION TO STRIKE PORTION OF KRESS DECLARATION ISO DEFENDANT'S OPPOSITION (Dkt. 79, Filed December 13, 2016)

## I.  INTRODUCTION

On March 16, 2016, plaintiffs Dr. Lakhi Sakhrani, Priya Sakhrani, and Quality Dialysis Center Las Tunas, LLC (collectively, "plaintiffs") filed the operative First Amended Complaint ("FAC") in this action against defendants the City of San Gabriel ("the City"), Jason Pu, Juli Costanzo, John Harrington, and Kevin Sawkins (collectively, "defendants"). Dkt. 11. In the FAC, plaintiffs assert a number of claims against defendants for violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Fair Housing Act ("FHA"), the California Fair Employment and Housing Act ("FEHA"), the Unruh Civil Rights Act, and for a Writ of Mandate. See generally FAC.

In brief, plaintiffs' claims arise out of their attempt to open a dialysis center on a commercially zoned property in San Gabriel. Plaintiffs submitted plans to the city planning commission and city council of San Gabriel requesting conditional use permits ("CUPs") to allow the proposed dialysis center to exceed 10,000 square feet and to allow the dialysis center to open with 20% fewer parking spaces than ordinarily required under the city's zoning laws. The City of San Gabriel's Planning Commission ("the Planning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

Commission" approved plaintiffs' applications; however, after a group of concerns citizens filed an appeal of the Planning Commission's decision, the City Council for the City of San Gabriel ("the Council") reversed the Planning Commission's decision and denied plaintiffs' CUP applications. Plaintiffs' claim for a writ of mandate seeks reversal of the Council's decision not to grant the requested CUPs.

On May 16, 2016, the Court granted in part and denied in part defendants' motion to dismiss the FAC. Dkt. 19. Specifically, the Court dismissed plaintiffs' claims for violations of the FHA and the FEHA. Id. Plaintiffs did not file an amended complaint and have proceeding with their remaining claims pursuant to the ADA, Rehabilitation Act, and Unruh Act as well as the writ of mandate claim.

On September 26, 2016, plaintiffs filed a motion for partial summary judgment as to their sixteenth claim seeking a writ of mandate. Dkt. 43. On September 28, 2016, defendants requested a continuance of the hearing on plaintiffs' motion, dkt. 49, which the Court granted, dkt. 52. On October 28, 2016, plaintiffs filed an amended motion for partial summary judgment as to their claim for a writ of mandate, dkt. 59 ("Mot."), an amended statement of uncontroverted facts, dkt. 60 ("SUF"), two declarations and accompanying exhibits, dkt. 61-62, and a request for judicial notice in support of their motion, dkt. 63 ("RJN"). On November 16, 2016, defendants filed a notice of lodging of the administrative record from the City Council's proceedings. Dkt. 69 ("AR"). On November 18, 2016, defendants filed a memorandum in opposition to plaintiffs' motion, dkt. 70 ("Opp'n"), supporting declarations, dkt. 71-74, a statement of genuine issues, dkt. 75 ("SGI"), and an objection to certain evidence submitted by plaintiffs, dkt. 76. On December 2, 2016, plaintiffs filed a reply in support of their motion.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

**II.    BACKGROUND**

Unless otherwise noted the following background is undisputed.

Plaintiffs provide dialysis and medical treatment to individuals who suffer from total failure of their kidneys, known as End Stage Renal Disease ("ESRD"). Patients with ESRD must receive dialysis three to four times per week for three to four hours per

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

session. If patients with ESRD do not receive this regular treatment they will die. Dialysis treatment centers often operate with extended hours beginning early in the morning and closing late at night because many patients are employed and must complete their treatment outside of normal work hours. Additionally, patients are typically brought to and from treatment in shuttles that serve dialysis patients rather than in their own vehicles. The relative scarcity of dialysis treatment centers and the increasing demand for dialysis treatment imposes severe burdens upon those who suffer from ESRD, who must adapt their schedules to accommodate transportation to and from treatment as well as ensure they are available for treatment during whatever slots are available at nearby facilities.

An emergency requiring the partial or total shut down of a dialysis facility places dialysis patients at serious risk. Accordingly, the Centers for Medicare and Medicaid Services have proposed a federal regulation requiring dialysis facilities to develop emergency preparedness plans, including arrangements with other dialysis facilities to ensure continuity of care in the event that one facility is forced to limit or cease operations. The Department of Health and Human Services has set a Final Rule target date of December 2016, when the regulation is expected to take effect.

Plaintiff Dr. Lakhi Sakhrani ("Dr. Sakhrani") is presently the owner of Quality Dialysis Center, a dialysis center located on San Gabriel Boulevard in San Gabriel ("QDC San Gabriel"). The facility at QDC San Gabriel is 9,900 square feet, contains 36 dialysis treatment stations, has 41 available parking spaces, and borders a residential neighborhood. QDC San Gabriel principally serves low-income patients whose treatment is covered under Medi-Cal and it has virtually no ability to take on additional patients because it operates at 97% of its capacity.

In September 2014, Dr. Sakhrani entered into a long-term lease for a parcel of property located at 237 E. Las Tunas Drive in San Gabriel ("the Property") for the purpose of building a new dialysis center ("QDC Las Tunas"). With the opening of QDC Las Tunas, Dr. Sakhrani hoped to make dialysis treatment available to additional patients in San Gabriel. Additionally, so that QDC San Gabriel could comply with the forthcoming emergency preparedness requirements, Dr. Sakhrani planned for QDC Las Tunas to have a similar number of treatment stations as QDC San Gabriel (37 to QDC San Gabriel's 36). Dr. Sakhrani intended to operate QDC Las Tunas in parallel with QDC San Gabriel, with the same number of employees, patients, hours, and patient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

transportation arrangements and for each to operate as an emergency back-up for the other.

The parties agree that QDC Las Tunas has to have a comparable number of treatment stations as QDC San Gabriel if either facility is to act as an emergency back-up for the other's patients. The parties also agree that federal regulations enacted in 2013 require QDC Las Tunas to have a larger building than QDC San Gabriel if QDC Las Tunas is going to operate with a comparable number of treatment spaces.

Although medical facilities are permitted on the Property, San Gabriel's land use regulations require a conditional use permit for any medical facility on the property that exceeds 10,000 square feet. Additionally, a facility like the proposed QDC Las Tunas would ordinarily be required to have 35 total parking spaces. Accordingly, Dr. Sakhrani eventually learned that in order to build QDC Las Tunas with 37 dialysis treatment stations, he would need to obtain two Conditional Use Permits ("CUP") from the City of San Gabriel: (1) to build a medical facility larger than 10,000 square feet; and (2) for a twenty percent reduction in the number of required parking spaces because of the size of the Property.[1]

In April 2015, plaintiff Priya Sakhrani submitted an application to the City on behalf of all plaintiffs seeking the two CUPs required to build the QDC Las Tunas. According to Dr. Sakhrani, staff from the City repeatedly advised plaintiffs that obtaining the CUPs would not be an issue and that they would easily receive their requested CUPs. The defendants argue that no formal commitments were ever made by City staff with authority to make such a commitment. In support of their application, plaintiffs submitted, among other things, an architectural report, an engineering report, a parking study, a traffic survey, and an acoustical study evaluating the noise effects that the proposed QDC Las Tunas would have upon neighboring areas. The consensus of these studies was that plaintiffs' plan for construction of the QDC Las Tunas complied with the City's Municipal Code and that QDC Las Tunas would not have a significant noise or parking effect on the area. The parking study concluded that 28 parking spaces would be

---

[1] Although the parties do not dispute the foregoing, the parties do dispute whether plaintiffs were required to build a dialysis facility at the Property that had comparable capacity to QDC San Gabriel or whether plaintiffs could make other emergency accommodation plans for patients from QDC San Gabriel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

sufficient for QDC Las Tunas based upon observation of and data from parking at QDC San Gabriel. The parking study found that, at its peak, the 41-space parking lot at San Gabriel had only 18 parking spaces in use and that, therefore, 28 spaces would be sufficient for QDC Las Tunas because over 80% of patients arrive by shuttle rather than in their own vehicles.

City Planning staff reviewed plaintiff's application and, on October 12, 2015, recommended that the Planning Commission approve the two CUPs subject to certain conditions such as preservation of a block wall separating QDC Las Tunas from a neighboring residence and prohibiting use of a neighboring residential street by shuttles serving the dialysis center.

On November 9, 2015, the Planning Commission held a meeting and, after a vote of three in favor and two opposed, adopted the recommendation of the City staff and approve the CUPs for QDC Las Tunas. On November 20, 2015, a group of San Gabriel citizens, consisting primarily of residents living on Country Club Drive, filed an appeal of the Planning Commission's decision.[2] Pursuant to San Gabriel's municipal code, the appeal was to be heard by the San Gabriel City Council ("the Council"), sitting as an administrative body to determine whether the Planning Commission's decision should be reversed, affirmed, or modified.

On January 5, 2016, the Council held a public hearing to decide the appeal. The Council was in receipt of the administrative record of proceedings before the Planning Commission, including the various studies submitted by plaintiffs. The Council heard from City planning staff who recommended approval of the CUPs. The Council permitted proponents of the CUP application to be heard for a total of 45 minutes and for opponents to be heard for up to 45 minutes. Plaintiffs presented their argument in support of the CUP applications, including their contention that the Americans with Disabilities Act requires approval of the CUPs because plaintiffs' patients are disabled and therefore entitled to a reasonable accommodation. Opponents, many of whom were

---

[2] The Property is at the intersection of Country Club Drive and E Las Tunas Drive in San Gabriel. Country Club Drive runs along the eastern edge of the Property. Immediately north of the Property, along the western side of Country Club Drive, is a residential neighborhood. Along the eastern edge of Country Club Drive and across the street from the Property is a golf course.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

residents in the area around the Property offered their own apprehensions about the parking, traffic, and noise impacts that the proposed dialysis center might have upon their neighborhood.  Opponents also submitted evidence purporting to refute the parking study submitted by plaintiffs.  Specifically, opponents offered several pictures of the parking lot at QDC San Gabriel, which appear to show more than 18 parking spaces in use.  One resident stated that she had personally observed the QDC San Gabriel parking lot nearly at capacity.  Opponents of the CUP argued that plaintiffs' parking study was incorrect and that other evidence showed that QDC San Gabriel required virtually all of its 41 parking spaces such that QDC Las Tunas would likely require more than 28.

Thereafter, the City Council ceased accepting public comment and evidence on the matter and began deliberations.  During deliberations, councilmembers directed several questions about the application to City planning staff, Dr. Sakhrani, the City Attorney, and others present for the hearing.  Ultimately, the Council found that it was required to make nine findings to determine whether or not plaintiffs should receive their CUPs and held votes on each.  Thereafter, at the City Attorney's suggestion, the Council directed City Planning Staff to prepare a resolution to memorialize its findings and decision to deny the CUPs.

On January 19, 2016, after a four to one vote, the Council adopted the resolution prepared by City staff reversing the Planning Commission's decision and denying the two CUP applications.  Shortly thereafter, plaintiffs initiated this suit.

## III. DISCUSSION OF THE LEGAL STANDARD

Plaintiffs' claim for a writ of mandate seeks judicial review of the City's administrative decision denying its CUP applications.  Ordinarily where the Court is asked to review an administrative proceeding, "the court is not required to resolve any facts." Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985).  The Court does not apply the summary judgment standard that would govern an "original district court proceeding." Id.  Instead, plaintiff's writ of mandate claim is governed by California Civil Code section 1094.5.  However, section 1094.5 "does not establish any single standard for judicial review of the evidentiary basis for agency determinations." Bixby v. Pierno, 4 Cal. 3d 130, 137, 481 P.2d 242 (1971).  It establishes two.

Section 1094.5 provides that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

> The inquiry in such a case shall extend to the questions whether . . . there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.
>
> . . . Where it is claimed that the findings are not supported by the evidence, *in cases in which the court is authorized by law to exercise its independent judgment on the evidence*, abuse of discretion is established if the court determines that the findings are *not supported by the weight of the evidence*. *In all other cases*, abuse of discretion is established if the court determines that the findings are *not supported by substantial evidence* in the light of the whole record.

Cal. Civ. Code § 1094.5(b)-(c) (emphasis added). The emphasized language above delineates the divide between two categories of writ of mandate claims. Each category of claims is subject to a different standard of review. However, as described in more detail below, the determination whether a case falls into one category or the other may turn upon close questions of law and fact.

### A.     How Courts Decide Which Test Governs the Agency Decision

At the outset, the Court observes that the two standards of review governing a writ of mandate claim are substantially different. The initial determination of the proper standard of review may prove critical to determining the correct outcome. In "cases in which the court is authorized by law to exercise its independent judgment on the evidence," Cal. Civ. Code § 1094.5(b), the court is called upon to resolve "on its own any conflicts in the evidence." Pittsburg Unified Sch. Dist. v. Comm'n On Prof'l Competence, 146 Cal. App. 3d 964, 976 (Ct. App. 1983). In conducting its independent review of the evidence, the court is not bound by the administrative agency's findings and is "free to make its own determination of the credibility of witnesses in the process." Id. at 977. Indeed, an exercise of independent judgment requires the trial court to "reweigh the evidence," rather than defer to reasonable judgments made by the administrative agency. Barber v. Long Beach Civil Serv. Com., 45 Cal. App. 4th 652, 658 (1996). The court must conduct a "limited trial de novo," based upon the evidence before the administrative agency. Bixby, 4 Cal. 3d at 143.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

In contrast, if the independent judgment standard does not apply to the court's review, the court must affirm the administrative agency's decision if it was supported by substantial evidence. See Cal. Civ. Code § 1094.5. "For this purpose, substantial evidence has been defined in two ways: first, as evidence of ponderable legal significance [that is] reasonable in nature, credible, and of solid value and second, as relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Desmond v. Cty. of Contra Costa, 21 Cal. App. 4th 330, 335 (1993) (quotation marks and citations omitted).

To determine whether or not to apply the independent judgment standard, California courts initially examined only whether the administrative decision implicated a party's property rights. If an administrative decision affected a different kind of right, for instance a constitutional right, California courts nonetheless applied the substantial evidence test. See e.g. Rubin v. Bd. of Directors of City of Pasadena, 16 Cal. 2d 119, 126–27 (1940) ("If [existing zoning restrictions] invade the respondents' constitutional rights there is an appropriate remedy open to them, but . . . *mandamus* will not lie to review the decision denying a variance" (emphasis in original)). However, in Bixby, the California Supreme Court expanded the inquiry to permit broader judicial review of administrative decisions affecting rights other than property rights. 4 Cal. 3d 130.

The Bixby court began by describing the history of section 1094.5, which codified judicially developed procedures existing in 1945 for review of certain statewide agency decisions. Id. at 137-138 (citing Temescal Water Co. v. Dep't of Pub. Works, 44 Cal. 2d 90, 105 (1955)). Based upon the approach already in use by the judiciary, the California Legislature adopted the language "in which the court is authorized by law to exercise its independent judgment" to continue to permit California's judiciary "to establish standards for determining which cases require such independent judgment review." Id. at 140. In Bixby, the court set forth one such standard. The Bixby court held:

> [t]he courts must decide on a case-by-case basis whether an administrative decision or class of decisions *substantially affects fundamental vested rights* and thus requires independent judgment review. [Citations] . . . the courts in this case-by-case analysis consider the nature of the right of the individual: whether it is a fundamental and basic one, which will suffer substantial interference by the action of the administrative agency, and, if it is such a fundamental right, whether it is possessed by, and vested in, the individual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

> or merely sought by him. . . . [I]f the right is fundamental, the courts have held the loss of it is sufficiently vital to the individual to compel a full and independent review.  The abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.

Id. at 144 (emphasis added).  Regarding the determination whether or not a right is "fundamental," the court observed that "courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation."  Id.  The foregoing rule is "justified in so far as it gives additional procedural protection to an interest of great importance."  Id. (quoting Jaffe, Judicial Control of Administrative Action (1965), at pp. 191-192).  In setting forth the foregoing standard, the Bixby court determined that it "yields no fixed formula and guarantees no predictably exact ruling in each case," but instead "performs a function in the protection of the rights of the individual," and protects the "unpopular" from the risk of unjust administrative decisions.  Id. at 146-47.

Courts since Bixby have clarified that section 1094.5 "reflects legislative intent to leave to the courts the determination of the appropriate standard of review," Frink v. Prod, 31 Cal. 3d 166, 173 (1982), and that a right "may be deemed fundamental within the meaning of Bixby on either or both of two bases: (1) the character and quality of its economic aspect; (2) the character and quality of its human aspect," Cooper v. Kizer, 230 Cal. App. 3d 1291, 1297 (Ct. App. 1991), modified (June 21, 1991).  "[U]sually rights which are deemed 'fundamental' are either constitutional or statutory in nature." Greenebaum v. City of Los Angeles, 153 Cal. App. 3d 391, 401 (Ct. App. 1984).

Defendants argue that the Council's decision does not substantially affect a vested fundamental right because numerous cases have found that the denial of a conditional use permit does not implicate such rights.  For example, in PMI Mortg. Ins. Co. v. City of Pac. Grove, 128 Cal. App. 3d 724 (Ct. App. 1981), the California Court of Appeal observed that "[c]ases involving abuse of discretion charges in the area of land use regulation do not involve fundamental vested rights. [Citations].  Usually, no vested right is affected by either the denial or granting of a variance."  PMI, 128 Cal. App. 3d at 729 (citing Flagstad v. City of San Mateo, 156 Cal.App.2d 138 (1957)).[3]  Elsewhere, courts

---

[3] In Flagstad, a California Court of Appeal stated that there "no vested right is affected by either the denial or the grant of a zoning variance."  156 Cal.App.2d at 140.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

have observed that, in general, a party has no "vested right to develop his property in a particular fashion," nor a "vested right to a permit free of conditions." Paoli v. California Coastal Com., 178 Cal. App. 3d 544, 550–51 (Ct. App. 1986) (reversing a lower court's application of the independent judgment test).

However, the foregoing line of cases is not without exception. California courts have, on occasion, found that land use regulations run afoul of fundamental, constitutional rights. For instance, in City of Santa Barbara v. Adamson, 27 Cal. 3d 123, 134 (1980), the California Supreme Court was confronted with a zoning ordinance which prevented a group of people from living together in one house because they were not, under the ordinance, members of a single family. The City of Santa Barbara defended the ordinance by arguing that the group of people could live elsewhere in the city by seeking a CUP or a variance. Id. at 129. Alternatively, the City argued, they could reside in a boarding house. Id. The trial court granted an injunction to the City prohibiting the twelve unrelated persons from living together. Rather than pursue an administrative decision by the City permitting them to reside together under a CUP or variance, the group brought a facial challenge to the ordinance while appealing the injunction. The California Supreme Court concluded that the ordinance distinguishing between a purported "family" and group of unrelated persons was invalid under the constitution of the state of California because it ran afoul of the privacy-related right "to live in an alternate family with persons not related by blood, marriage, or adoption." Id. at 130.

In contrast to the cases relied upon by defendants is a separate line of cases concluding that the practical effects of an administrative agency's decision can substantially affect vested fundamental rights. For example, in Strumsky v. San Diego Cty. Employees Ret. Assn., 11 Cal. 3d 28 (1974), the court determined that San Diego's decision to deny certain enhanced death benefits to a police-officer's widow implicated a vested fundamental right because the decision "might well mean . . . the difference between self-support and the necessity that she supplement pension income through employment or other means." 11 Cal. 3d at 45. Thus, the court observed, "the impact in human terms of the decision is manifest," and therefore subject to the independent

---

The court held that "[t]he decision of the municipal body to grant or deny a variance will not be disturbed by the courts in the absence of a clear and convincing showing of an abuse of discretion." Id. However, Flagstad preceded Bixby and made no mention of the standards pursuant to section 1094.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

judgment standard when reviewed by the trial court.  Id.  Similarly, in Frink, the California Supreme Court concluded that a potentially disabled person's statutory right to public assistance is both vested and fundamental such that a court should render its independent judgment regarding whether or not, based on the administrative record, the person was disabled.  31 Cal. 3d at 178.  The court reasoned, citing Strumpsky for comparison, that, "welfare benefits to an individual totally disabled from gaining employment are likely to be even more important and necessary than retirement benefits to an individual who may still be able physically to earn a livelihood."  Id.  The court went on to note that "[w]e have continued since *Bixby*, and will doubtless continue in the future, to remain especially responsive to the human as opposed to the purely economic dimension of rights affected by administrative action."  Id. at 177.  Frink has spawned other cases relating to the rights of the disabled, for instance, in Cooper v. Kizer, a California court of appeal extended the independent judgment standard to a review of applications for Medi-Cal benefits on the basis of disability.  230 Cal. App. 3d at 1298.  The court reasoned that "the *Frink* case and cases recognizing *the fundamental nature of programs for the disabled* make it clear that independent judgment review must be applied in this case."  Id. (emphasis added).

Elsewhere, the independent judgment standard has been extended to statutory rights not to face discrimination.  In Kerrigan v. Fair Employment Practice Com., 91 Cal. App. 3d 43 (1979), a man alleged that he was denied an entry level attorney job in the San Diego City Attorney's Office because of age discrimination in violation of California Labor Code section 1420.1.  The man filed a complaint with the California Fair Employment Practices Commission ("FEPC"), which found that there was no violation of section 1420.1.  Thereafter, the man filed suit against the City of San Diego and the FEPC, seeking, in part, judicial review of the FEPC's decision.  The Kerrigan court held that his right not to face discrimination was conferred by statute and therefore "vested." Id. at 154.  The court reasoned that:

> [t]he courts have a duty to protect constitutional or fundamental rights from infringement by administrative agencies.  The courts, not the administrative agency, have the valuable expertise, the broad background and constitutional foundation necessary to perceive and defend constitutional and fundamental rights from a balanced perspective.  A line, carefully drawn between the subjects over which the agency has important expertise and the areas of quasi-judicial decision-making over which the courts have superior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

>   knowledge and background, point to the independent judgment standard where constitutional rights are circumscribed.

Id. The court then found that the statutory rights at issue in Kerrigan were similarly those with which the courts have superior knowledge and background than administrative agencies. Id.

### B. The Present Controversy

Plaintiffs argue that the present controversy substantially affects vested fundamental rights because the Council, in denying their CUPs, did so with intent to discriminate against disabled ESRD patients. Plaintiffs further allege that defendants' decision constituted a failure to make a reasonable accommodation as required by the ADA to avoid discrimination on the basis of disability. FAC ¶¶ 183-191; see also Behavioral Health Servs. v. City of Gardena, 2003 WL 21750852, at * 10 (C.D. Cal. Feb. 26, 2003) ("Cities cannot refuse to accommodate by imposing unreasonable conditions on the grant of a use permit").

Defendants contend that this is a typical permitting decision that does not implicate vested fundamental rights and was within the expertise of the Council. Defendants also argue that the Court should decline to exercise supplemental jurisdiction over the writ of mandate claim. Opp'n at 4-5. Defendants made the same argument in their motion to dismiss the writ of mandate claim. In its order on defendants' motion to dismiss, the Court rejected defendants' request and exercised supplemental jurisdiction because "plaintiffs' claim for a writ of mandate is 'so related' to their federal ADA and Rehabilitation Act claims as to 'form a part of the same case or controversy.'" Dkt. 19 (citing 28 U.S.C. § 1357(a); Wesner v. County of Napa, 2009 WL 650274 (N.D. Cal. Mar. 11, 2009)).

Because the writ of mandate claim is interrelated with plaintiffs' claims pursuant to the ADA and Rehabilitation Act, it is difficult to discern whether the Council's decision substantially affected a vested fundamental right. None of the cases relied upon by either party arose under analogous facts and allegations. Unlike the FEPC's decision in Kerrigan, the Council did not make an express finding as to whether or not plaintiffs faced discrimination in the processing of their application. The Council merely decided the merits of plaintiffs' application. Similarly, in contrast to the agency decisions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

reviewed in <u>Frink</u> and <u>Cooper</u>, the Council did not expressly decide that certain persons were not disabled or not entitled to a benefit based upon their disability. However, plaintiffs raised the issue of a reasonable accommodation with the Council and the Council implicitly rejected their argument. Although California courts have found that CUP applications do not ordinarily implicate fundamental rights, the Court cannot identify any such case in which an administrative agency's decision was challenged on grounds like those here. Relying upon the ADA and Rehabilitation Act, plaintiffs allege that they are entitled to a decision that was not based upon discriminatory intent and which involved an interactive, good faith process to explore reasonable accommodations for ESRD patients. The denial of CUPs here may have substantially affected those purported rights.

Whereas the Court has greater expertise in evaluating the scope of plaintiffs' rights pursuant to the ADA and Rehabilitation Act, the Council has greater expertise in weighing the appropriate considerations in local land-use decisions. Cases in this context make clear that under ordinary circumstances, local land-use permitting decisions rarely implicate fundamental rights, let alone substantially affect said rights. However, the cases outlined above also suggest that administrative decisions with substantial effects upon statutory rights arising under the ADA and Rehabilitation Act *may* require independent judgment review. Additionally, other factors may caution a broader judicial review of the Council's decision. For instance, it may be the case that the Council's decision substantially affects patients' access to life-saving treatment. It is undisputed that demand for dialysis is high and growing and that granting QDC Las Tunas these CUPs would enable it to help mitigate a mortal risk posed to QDC San Gabriel patients among other patients suffering ESRD. Certain decisions with disparate impacts upon the disabled are prohibited by the ADA and plaintiffs have also made out such claims.

It is difficult on the present record to discern how the statutory rights above have been affected by the Council's decision denying the CUP applications at issue. Although plaintiffs have sufficiently alleged ADA and Rehabilitation Act claims, no trier of fact has yet been called upon to resolve them based upon the available evidence. If plaintiffs' ADA and Rehabilitation Act claims should ultimately fail, the Court would have little trouble concluding that the Council's decision did not substantially affect any vested fundamental right arising out of the ADA or Rehabilitation Act. In that case, substantial evidence review, rather than independent judgment review, would be appropriate. However, the Court's decision regarding the standard of review may implicate the legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-1756-CAS(PLAx) | Date | December 20, 2016 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI, ET AL. V. CITY OF SAN GABRIEL, ET AL. | | |

and factual questions arising under plaintiffs' ADA and Rehabilitation Act claims. Accordingly, it would be inappropriate for the Court to make such a decision without first permitting the record supporting those claims to be fully developed.

Accordingly, in light of the foregoing, the plaintiff's motion is **DENIED without prejudice**, subject to renewal at such time as plaintiffs' ADA and Rehabilitation Act claims have been resolved by a trier of fact.

## IV. CONCLUSION

Plaintiff's motion for partial summary judgment is **DENIED without prejudice**.

In light of the foregoing, plaintiff's motion to strike a portion of the evidence in support of defendant's opposition in this matter is **DENIED as moot**.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CL |