UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'

| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Nichole Forest | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Vinay Kohli | Brian Moss |
| Daron Tooch | Scott Davenport |

**Proceedings:** PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO REASONABLE ACCOMMODATION CLAIM (Dkt. 95, Filed January 30, 2017)

## I. INTRODUCTION

On March 16, 2016, plaintiffs Dr. Lakhi Sakhrani, Priya Sakhrani, and Quality Dialysis Center Las Tunas, LLC (collectively, "plaintiffs") filed the operative First Amended Complaint ("FAC") in this action against the City of San Gabriel ("the City") and several officials for the City, namely, Jason Pu, Juli Costanzo, John Harrington, and Kevin Sawkins (collectively, "defendants"). Dkt. 11. In the FAC, plaintiffs assert a number of claims against defendants for violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Fair Housing Act ("FHA"), the California Fair Employment and Housing Act ("FEHA"), the Unruh Civil Rights Act, and for a Writ of Mandate. See generally FAC.

In brief, plaintiffs' claims arise out of their attempt to open a dialysis center on a commercially zoned property in the City of San Gabriel. Plaintiffs submitted plans to the city planning commission and city council of San Gabriel requesting conditional use permits ("CUPs") to allow the proposed dialysis center to exceed 10,000 square feet and to allow the dialysis center to open with 20% fewer parking spaces than ordinarily required under the City's zoning laws. The City's Planning Commission ("the Planning Commission") approved plaintiffs' applications; however, after a group of concerned

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

citizens filed an appeal of the Planning Commission's decision, the City Council for the City of San Gabriel ("the Council") reversed the Planning Commission's decision and denied plaintiffs' CUP applications.

On May 16, 2016, the Court granted in part and denied in part defendants' motion to dismiss the FAC. Dkt. 19. Specifically, the Court dismissed plaintiffs' claims for violations of the FHA and the FEHA. Id. Plaintiffs did not file an amended complaint and have proceeded with their remaining claims pursuant to the ADA, Rehabilitation Act, and Unruh Act as well as the writ of mandate claim.

On September 26, 2016, plaintiffs filed a motion for partial summary judgment as to their sixteenth claim seeking a writ of mandate. Dkt. 43. On December 20, 2016, the Court denied plaintiffs' motion without prejudice, concluding that summary judgment as to the writ of mandate claim was inappropriate before plaintiff's ADA and Rehabilitation Act claims had been resolved on the merits. Dkt. 83.

On January 9, 2017, plaintiffs filed a motion to strike defendants' jury trial demand. Dkt. 85. On February 6, 2017, the Court granted plaintiffs motion because defendants do not appear to have a right to a jury trial. Dkt. 131. However, the Court further determined that, "it would be prudent to impanel an advisory jury . . . to aid the Court in its findings on what, if any, damages ought to be awarded to plaintiffs." Id. at 7.

On January 30, 2017, plaintiffs filed two motions for partial summary judgment – one seeking summary judgment with respect to the reasonable accommodation claim, dkt. 95, and one seeking summary judgment with respect to the disparate treatment claim, dkt. 104. In support of both motions, plaintiffs have filed a consolidated statement of uncontroverted facts. Dkt. 100. The Court is also in receipt of plaintiffs exhibits and declarations filed in support of both motions. Dkts. 95-1, 96, 97, Exhibits and Declaration of Nilay Vora ("Vora Decl."); Dkt. 98, Declaration of Cherry Wu ("Wu Decl."); Dkt. 99, Declaration of Lakhi Sakhrani ("Sakhrani Decl."); & Dkt. 101, Request for Judicial Notice ("RJN"). Plaintiffs sought leave to file several declarations by dialysis patients under seal, dkt. 93, which the Court granted, dkt. 105. Therefore, the Court is also in receipt of nine declarations from plaintiffs' dialysis patients. Dkts. 115-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

120, 122-124.[1] On February 3, 2017, plaintiffs further supplemented the record by filing a notice of errata regarding missing portions of Exhibit 4 to Vora's declaration. Dkt. 127.

On February 20, 2017, defendants filed a consolidated opposition to both motions for partial summary judgment. Dkt. 138. On March 6, 2017, plaintiffs filed a reply in support of each motion. Dkts. 146, 147.

The memorandum of points and authorities in support of each motion is 25 pages in length. Pursuant to Local Rule 11-6, no memorandum may exceed 25 pages unless permitted by order of the Court. On March 9, 2017, the Court held a status conference with both parties during which the Court notified plaintiffs that, by filing two separate motions for partial summary judgment with respect to separate claims, they had improperly evaded the page length limitation enshrined in the local rules. The Court indicated its tentative intent to deny both motions without prejudice on that basis and permit plaintiffs to file a single, consolidated motion for summary judgment with respect to any or all of plaintiffs' claims. Thereafter, plaintiffs' counsel stated that plaintiffs preferred to maintain the existing hearing date of March 20, 2017, for these matters and would therefore withdraw the motion for partial summary judgment with respect to the disparate treatment claim, dkt. 104. Without objection from defendants, the Court permitted plaintiffs to withdraw the motion with respect to the disparate treatment claim and proceed solely on the instant motion for partial summary judgment with respect to their reasonable accommodation claim. Dkt. 148.

In accordance with the foregoing, the Court proceeds to decide plaintiffs' motion for partial summary judgment with respect to their claim for failure to provide a reasonable accommodation. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

/ / /

/ / /

---

[1] Defendants contend that the evidence filed in support of plaintiffs' motions is in excess of 3,100 pages, or nearly 60,000 pages depending on how one considers a spreadsheet of data offered by plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

## II.     BACKGROUND

Unless otherwise noted the following factual background is undisputed.

Plaintiffs provide dialysis and medical treatment to individuals who suffer from total failure of their kidneys, known as End Stage Renal Disease ("ESRD"). Patients with ESRD must receive dialysis three to four times per week for three to four hours per session. If patients with ESRD do not receive this regular treatment they will die. Dialysis treatment centers often operate with extended hours beginning early in the morning and closing late at night because many patients are employed and must complete their treatment outside of normal work hours. Additionally, patients are typically brought to and from treatment in shuttles that serve dialysis patients rather than in their own vehicles. The relative scarcity of dialysis treatment centers and the increasing demand for dialysis treatment imposes severe burdens upon those who suffer from ESRD, who must adapt their schedules to accommodate transportation to and from treatment as well as ensure they are available for treatment during whatever slots are available at nearby facilities.

An emergency requiring the partial or total shut down of a dialysis facility places dialysis patients at serious risk. Accordingly, the Centers for Medicare and Medicaid Services has adopted a regulation requiring that dialysis providers have emergency preparedness plans, including arrangements with other dialysis facilities to ensure continuity of care in the event that one facility is forced to limit or cease operations.

Plaintiff Dr. Lakhi Sakhrani ("Dr. Sakhrani") is presently the owner of Quality Dialysis Center, a dialysis center located on San Gabriel Boulevard in San Gabriel ("QDC San Gabriel"). The facility at QDC San Gabriel is 9,900 square feet, contains 36 dialysis treatment stations, has 41 available parking spaces, and borders a residential neighborhood. Over 80 percent of QDC San Gabriel's patients are low-income and have their treatment paid for through Medi-Cal. QDC San Gabriel has virtually no ability to take on additional patients because it operates at 94% of its capacity.

Dialysis treatment is necessary for a person with ESRD to survive and even small delays or gaps in treatment pose a mortal risk to dialysis patients. For those receiving dialysis treatment, the five-year survival rate is 35 percent and between 20 and 25 percent of ESRD patients die within the first year of beginning treatment. Despite the risks faced

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

by ESRD patients, it is undisputed that there is a scarcity of dialysis treatment options in Southern California, which is exacerbated by an increase in the incidence of kidney failure. The parties agree that the present scarcity of treatment options in Southern California imposes severe burdens upon ESRD patients, who must venture farther in search of treatment and must accept treatment slots that interfere with their ability to work, spend time with family, or perform everyday tasks for themselves. Because QDC San Gabriel operates, for practical purposes, at full-capacity, Dr. Sakhrani and his staff have been forced to turn away patients and impose onerous burdens on their existing patients.

     Plaintiffs have submitted several declarations from current patients at QDC San Gabriel. Generally, the patient-declarations describe the practical importance of additional dialysis treatment spaces and flexible scheduling arrangements wherever possible. For example, L.B. describes how she must ride several buses for approximately four hours Monday, Wednesday, and Friday just to get from her home to her dialysis treatment and then to work afterwards. Dkt. 109, L.B. Declaration (Redacted) ("L.B. Decl.) ¶¶ 5-6. If she did not have a dialysis treatment slot at 4:00 a.m. at QDC San Gabriel, she claims that she would not be able to work her full-time job from 9:00 a.m. to 6:00 p.m. and she would, therefore, lose her health insurance coverage. Id. ¶ 7. For another patient, C.T.L., the existing treatment timeslot available at QDC San Gabriel prevents her from working as much as she otherwise might. Dkt. 106, C.T.L. Declaration (Redacted) ("C.T.L. Decl.") ¶ 5. C.T.L. has Hepatitis B, which requires that she receive dialysis in an isolated treatment station. Id. ¶ 4. Because of her Hepatitis B, C.T.L. must contend with even scarcer treatment options and adapt her life around the sole available timeslot during which she can receive treatment at QDC San Gabriel. Id. ¶ 4. Several patients describe the practical effects that a scarcity of treatment options has had upon them and their families, upon whom they rely for support. See e.g. Dkt. 110, E.S. Declaration (Redacted) (wife quit her job and drives patient to/from treatment); Dkt. 112, K.W. Declaration (Redacted) (moved in with son, who switched to working part-time in order to drive K.W. to treatment).[2]

     Because of the scarcity of treatment spaces in Southern California and the newly adopted emergency preparedness regulation, plaintiffs have been searching for a location

---

[2] Defendants do not dispute any of the patient accounts or claims, but contend that they are irrelevant.

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

to open a second dialysis facility. Cherry Wu, the facility administrator for QDC San Gabriel, claims that plaintiffs looked for two and a half years to find a property that would suit their needs and that:

> there are virtually no available properties with enough space to accommodate a dialysis center that complies with all applicable statutes and regulations as well as parking. I have continued to look for available properties for a new dialysis center, but have not been able to find one.

Wu Decl. ¶ 13. In September 2014, Dr. Sakhrani entered into a long-term lease for a parcel of property located at 237 E. Las Tunas Drive in San Gabriel ("the Property") for the purpose of building a new dialysis center ("QDC Las Tunas"). Dr. Sakhrani planned for QDC Las Tunas to have a similar number of treatment stations as QDC San Gabriel (37 to QDC San Gabriel's 36) and for QDC Las Tunas to operate in parallel with QDC San Gabriel – with the same number of employees, number of patients, hours, and patient transportation arrangements – and for each to operate as an emergency back-up for the other.

    The parties agree that QDC Las Tunas must have a comparable number of treatment stations as QDC San Gabriel if either facility is to act as an emergency back-up for the other's patients. The parties also agree that federal regulations enacted in 2013 require QDC Las Tunas to have a larger building than QDC San Gabriel if QDC Las Tunas is going to operate with a comparable number of treatment spaces.

    Although medical facilities are permitted on the Property, the City's land use regulations require a conditional use permit for any medical facility on the property that exceeds 10,000 square feet. Additionally, a facility like the proposed QDC Las Tunas would ordinarily be required to have 35 total parking spaces. Accordingly, Dr. Sakhrani eventually learned that in order to build QDC Las Tunas with 37 dialysis treatment stations, he would need to obtain two CUPs from the City of San Gabriel: (1) to build a medical facility larger than 10,000 square feet; and (2) for a twenty percent reduction in the number of required parking spaces because of the size of the Property. Although the parties agree that plaintiffs could build a dialysis center on the Property without requiring CUP approval if the proposed building were under 10,000 square feet and had appropriate parking, neither party has offered any evidence indicating how many dialysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

treatment stations could be built without requiring a variance of the City's zoning regulations.

In April 2015, plaintiff Priya Sakhrani submitted an application to the City on behalf of all plaintiffs seeking the two CUPs required to build the proposed QDC Las Tunas. According to Dr. Sakhrani, staff from the City repeatedly advised plaintiffs that obtaining the CUPs would not be an issue and that they would easily receive their requested CUPs.[3] After conferring with Planning Commission staff, plaintiffs' commissioned several expert reports to evaluate the QDC Las Tunas proposal. In support of their CUP applications, plaintiffs submitted, among other things, an architectural report, an engineering report, a parking study, a traffic survey, and an acoustical study evaluating the noise effects that the proposed QDC Las Tunas would have upon neighboring residences. The consensus of these studies was that plaintiffs' plan for construction of the QDC Las Tunas complied with the City's Municipal Code and that QDC Las Tunas would not have a significant noise or parking effect on the area, provided plaintiffs took precautions. The parking study concluded that 28 parking spaces would be sufficient for QDC Las Tunas based upon observation of and data from parking at QDC San Gabriel. The parking study found that, at its peak, the 41-space parking lot at QDC San Gabriel had only 18 parking spaces in use and that, therefore, 28 spaces would be sufficient for QDC Las Tunas because over 80% of patients arrive by shuttle rather than in their own vehicles.

City Planning staff reviewed plaintiffs' application and, on October 12, 2015, recommended that the Planning Commission approve the two CUPs subject to certain conditions such as preservation of a block wall separating QDC Las Tunas from a neighboring residence and prohibiting use of a neighboring residential street by shuttles serving the dialysis center.

On November 9, 2015, the Planning Commission held a meeting and, after a vote of three in favor and two opposed, adopted the recommendation of the City staff and

---

[3] Defendants claim that this fact is disputed. Defendants appear to contend, although they do not cite supporting evidence, that city planning staff representations were made in each staff member's individual capacity rather than "in any formal capacity." Dkt. 139, Defendants' Statement of Genuine Issues ("SGI") No. 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

approve the CUPs for QDC Las Tunas. On November 20, 2015, a group of San Gabriel citizens, consisting primarily of residents living on Country Club Drive, filed an appeal of the Planning Commission's decision.[4] Pursuant to San Gabriel's municipal code, the appeal was to be heard by the San Gabriel City Council ("the Council"), sitting as an administrative body to determine whether the Planning Commission's decision should be reversed, affirmed, or modified.

On January 5, 2016, the Council held a public hearing to decide the appeal. The Council was in receipt of the administrative record of the proceedings before the Planning Commission, including the various studies submitted by plaintiffs. The Council heard from City staff who recommended approval of the CUPs. The Council permitted proponents of the CUP applications to be heard for a total of 45 minutes and for opponents to be heard for up to 45 minutes. Plaintiffs presented their argument in support of the CUP applications, including their contention that the Americans with Disabilities Act requires approval of the CUPs because plaintiffs' patients are disabled and therefore entitled to a reasonable accommodation. Opponents, many of whom were residents in the area around the Property offered their own apprehensions about the parking, traffic, and noise impacts that the proposed dialysis center might have upon their neighborhood. Opponents also submitted evidence purporting to refute the parking study submitted by plaintiffs. Specifically, Deborah Jones, a concerned citizen, offered several pictures of the parking lot at QDC San Gabriel, which appear to show more than 18 parking spaces in use. Jones told the Council that she had personally observed the QDC San Gabriel parking lot nearly at capacity. Opponents of the CUP argued that plaintiffs' parking study was incorrect and that other evidence showed that QDC San Gabriel required virtually all of its 41 parking spaces such that QDC Las Tunas would likely require more than 28 spaces.

Thereafter, the City Council ceased accepting public comment and evidence on the matter and began deliberations. During deliberations, councilmembers directed several questions about the application to City planning staff, Dr. Sakhrani, the City Attorney,

---

[4] The Property is at the intersection of Country Club Drive and E. Las Tunas Drive in San Gabriel. Country Club Drive runs along the eastern edge of the Property. Immediately north of the Property, along the western side of Country Club Drive, is a residential neighborhood. Along the eastern edge of Country Club Drive and across the street from the Property is a golf course.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

and others present for the hearing. Ultimately, the Council found that it was required to make nine findings to determine whether or not plaintiffs should receive their CUPs and held votes on each. Thereafter, at the City Attorney's suggestion, the Council directed City Planning Staff to prepare a resolution to memorialize its findings and decision to deny the CUPs.

On January 19, 2016, after a four to one vote, the Council adopted the resolution prepared by City staff reversing the Planning Commission's decision and denying the two CUP applications. Shortly thereafter, plaintiffs initiated this suit.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. The Applicable Law

The ADA aims to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities . . . [and] invoke the sweep of congressional authority . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b). Congress enacted the ADA with the understanding that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." Alexander v. Choate, 469 U.S. 287, 295 (1985). Accordingly, the language of the ADA is construed broadly to advance the law's remedial purpose. Hason v. Med. Bd. of Cal., 279 F.3d 1167, 1172 (9th Cir. 2002).

Title II of the ADA provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title II of the ADA prohibits more than what might commonly be understood as *discrimination*, but also prohibits "exclusion" by reason of disability. Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001). To prevail under Title II, a party must demonstrate that: (1) he is a qualified individual with a disability; (2) he was excluded from or denied the benefits of a public entity's "services, programs, or activities," or otherwise faced discrimination; and (3) the "exclusion, denial, or discrimination was by reason of his disability."[5] Cohen v. City of Culver City, 754 F.3d

---

[5] In this case, the Court has already held that plaintiffs, none of whom are disabled, have standing to assert claims on behalf of their patients whom the parties agree are disabled. Dkt. 19.

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

690, 695 (9th Cir. 2014). The phrase "services, programs, or activities," as it is used in Title II, "brings within its scope anything a public entity does." Lee, 250 F.3d at 691.

Regulations promulgated by the Department of Justice are ordinarily given "controlling weight" over the interpretation of Title II's provisions.[6] McGary v. City of Portland, 386 F.3d 1259, 1269 n.6 (9th Cir. 2004). Federal regulations require that public entities:

> make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7)(i).[7] In light of the foregoing, plaintiffs must demonstrate that granting the CUPs was (1) "necessary" to avoid discrimination and (2) "reasonable."

Although a city may not be required to make "'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones." Alexander v. Choate, 469 U.S. 287, 300 (1985). The requirement of reasonable

---

[6] In addition to the applicable regulations governing the ADA, courts regularly rely upon cases interpreting analogous provisions of the Fair Housing Amendments Act ("FHAA") and Rehabilitation Act ("RA"). See Giebeler v. M & B Assocs., 343 F.3d 1143, 1149 (9th Cir. 2003) (reasonable accommodation provisions of each statute are analogous because, "the concept that policies and practices must be modified in some instances to accommodate the needs of the disabled is common to" the ADA, RA, and FHAA).

[7] In the employment context (Title I), the ADA requires "reasonable accommodations." 42 U.S.C. § 12112. Although the parties use the phrase "reasonable accommodation" to describe and discuss plaintiffs' first claim against defendants, the phrase does not appear anywhere in Title II of the ADA. Instead, public entities are required to make a "reasonable modification" of policies to comply with the foregoing federal regulation.

| | | | |
|---|---|---|---|
| | CIVIL MINUTES - GENERAL | | 'O' |
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

modifications extends to a city's zoning scheme, where "[c]ities cannot refuse to accommodate by imposing unreasonable conditions on the grant of a use permit." Behavioral Health Servs. v. City of Gardena, 2003 WL 21750852, at * 10 (C.D. Cal. Feb. 26, 2003) (citing Turning Point, Inc. v. City of Caldwell, 74 F.3d 941, 945 (9th Cir. 1996)). For instance, cities may be required to permit higher occupancy on a property to accommodate more people with disabilities. City of Edmonds v. Washington State Bldg. Code Council, 18 F.3d 802, 807 (9th Cir. 1994), aff'd sub nom. City of Edmonds v. Oxford House, Inc., 514 U.S. 725 (1995). Where a city does not modify its occupancy restrictions to accommodate additional housing for the disabled, courts may order the city to increase the maximum occupancy of a particular property to a reasonable level determined by the court. Turning Point, 74 F.3d at 944. Where zoning restrictions might decrease the availability of treatment at a particular organization serving those with disabilities, courts may order reasonable zoning modifications to facilitate treatment for persons with disabilities. See First Step, Inc. v. City of New London, 247 F. Supp. 2d 135, 155 (D. Conn. 2003) (where some students would otherwise be unable to participate in program, city was required to permit a non-profit educational facility to transport mentally ill students through narrow alley).

Ultimately, courts must determine "whether a city has to alter neutral zoning policies to reasonably accommodate and integrate handicapped persons. The answers will vary depending on the facts of a given case." City of Edmonds, 18 F.3d at 807. "The court's obligation under the ADA and accompanying regulations is to ensure that the decision reached by the state authority is appropriate under the law and in light of proposed alternatives." Crowder v. Kitagawa, 81 F.3d 1480, 1485 (9th Cir. 1996). An accommodation is "reasonable" within the meaning of Title II when "it imposes no 'fundamental alteration in the nature of the program' or 'undue financial or administrative burdens.'" Giebeler v. M & B Assocs., 343 F.3d 1143, 1157 (9th Cir. 2003) (citing Howard v. City of Beavercreek, 276 F.3d 802, 806 (6th Cir. 2002)). Whether or not an accommodation is reasonable is "ordinarily a question of fact," Lujan v. Pac. Mar. Ass'n, 165 F.3d 738, 743 (9th Cir. 1999), that requires detailed case-specific findings, Cowder, 81 F.3d at 1486.

With the foregoing principles in mind, the Court proceeds to assess whether summary judgment is appropriate in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

### B. The Parties' Dispute

In this case the parties agree on most of the underlying facts. Defendants acknowledge that plaintiffs' patients are disabled and that plaintiffs' patients are entitled to reasonable accommodations.[8] It is also undisputed that plaintiffs could have built a dialysis center without any additional permits if they built a center that was less than 10,000 square feet and had sufficient parking on the Property. Defendants implicitly propose that plaintiffs proceed to build a dialysis center in compliance with the existing zoning laws and that no further accommodation is necessary.

However, the undisputed fact that plaintiffs could build a smaller dialysis facility on the Property is not dispositive. Defendants may be required to make reasonable modifications to their zoning restrictions if doing so would increase the availability of Dialysis treatment in San Gabriel. In that respect, Turning Point is instructive. In Turning Point, a non-profit homeless shelter sought to use a single-family residence in order to expand its existing shelter operation. Turning Point, 74 F.3d at 942. The shelter

---

[8] The defendants' position is not entirely clear. For example, defendants acknowledge that the dialysis patients meet the "essential eligibility requirements" for the CUPs, see SGI No. 6 (acknowledging the patients are "qualified individuals with disabilities" within the meaning of the ADA) & 42 U.S.C. § 12131(2) (defining "qualified individual with a disability" as anyone with a disability who "meets the essential eligibility requirements for the receipt" of the service at issue), while simultaneously arguing that granting a CUP would have fundamentally altered the zoning scheme, Opp'n at 12 – two seemingly irreconcilable positions, see Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 158 (2d Cir. 2013) (the "essential eligibility requirements" under the ADA are those that are "necessary to prevent [a] fundamental alteration of the program"). Therefore, the Court cannot discern if defendants contend that plaintiffs failed to meet an essential requirement for the CUPs (in contravention of their acknowledgement in SGI No. 6) or if defendants are advancing a legal argument that some CUP requirements are "fundamental" to the zoning scheme without being "essential" (in contravention of cases like Mary Jo C. that have interpreted those words in Title II and governing regulations).

However, the Court need not resolve these issues because plaintiffs have not met their burden of demonstrating that summary judgment is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

served primarily individuals with physical or mental disabilities. Id. Shelter staff communicated with city planners and got the impression they could expand their shelter without a special use permit ("SUP") for the new residence. Id. Thereafter, the shelter learned that existing zoning restrictions capped the occupancy on the property at twelve. Id. The shelter needed an SUP to house more than twelve people at its new property and sought an SUP through the city's Planning and Zoning Commission. Id. at 943. The Planning and Zoning Commission approved the SUP and set the occupancy maximum at 25 people. Id. The shelter appealed the decision to the city council, arguing the cap was too low. Id. A neighbor also appealed, arguing the cap was too high. Id. After a public hearing, the city council sided with the neighbor, voted to grant the SUP, but to lower the occupancy approval to 15 people. Id. The non-profit filed suit. The court ordered that the occupancy be capped at 25 and lowered the number of required parking spaces per resident. Id. at 944. On appeal, the Ninth Circuit observed that the district court's ruling regarding the failure to accommodate and the remedy were a faithful reflection of the Circuit's FHAA caselaw. Id. at 945. The court further noted that the facts demonstrated the city's "need to accommodate," because "it was found that housing for the handicapped was affected by [the city's] insistence on an occupancy level that was unreasonable." Id.

Plaintiffs here, like those in Turning Point, seek to serve *more* people with disabilities than they otherwise can on the property without a zoning exception. Turning Point appears to describe a basis for compelling the City to grant the CUPs; however, plaintiffs have not yet made the showing deemed sufficient in Turning Point. In Turning Point, the case proceeded through a bench trial, after which the magistrate judge made findings of fact. Most importantly, the Ninth Circuit reasoned, the district court found that the city's occupancy limitation was "not calculated according to any uniform code or zoning ordinance; was not designed to preserve the character of a single-family residential zone . . .; and was a severe financial burden on [plaintiff] that would eventually force [plaintiff] to close." Id. at 944. Based on those considerations, the magistrate judge concluded that the maximum occupancy rules were unreasonable – a finding that the Ninth Circuit affirmed. Id.

Plaintiffs frame the denial of the CUPs as a refusal by the City to allow QDC Las Tunas to be built. However, plaintiffs are still permitted to build a dialysis treatment center on the Property. In contrast to Turning Point, the maximum square footage of the permissible dialysis center on the Property appears to be based upon a uniform zoning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

ordinance. Furthermore, unlike the plaintiff in Turning Point, plaintiffs have not demonstrated that operating a dialysis center at fewer square feet would force them to shut-down. Plaintiffs are not required to demonstrate that the denial of the CUP will force them to shut down, but these facts distinguish the present case from Turning Point. More importantly, the feasibility of building a smaller dialysis center and the impact that would have on plaintiffs' operation is a factual issue at the core of plaintiffs' case. However, the record is silent regarding the marginal benefit of the CUPs as compared to anything potentially built in compliance with the 10,000 maximum square footage restriction.

At bottom the parties disagree about whether the accommodation sought (two CUPs) was a "reasonable modification" of the City's zoning within the meaning of 28 C.F.R. § 35.130(b)(7)(i), or whether granting the accommodation would have fundamentally altered the City's zoning scheme. The parties also disagree as to whether it was "necessary" for the City to grant the CUPs to avoid discrimination, as required by 28 C.F.R. § 35.130(b)(7)(i), or whether QDC San Gabriel could make emergency preparedness arrangements with other providers. On those material issues of disputed fact, plaintiffs acknowledge that the evidence supports competing inferences. Nonetheless, plaintiffs request that the Court weigh the evidence and make findings in their favor. See Reply at 3

> Where a material issue of disputed fact will be resolved through a bench trial:
>
> there is no reason why the court and the parties should go through the motions of a trial if the court will eventually end up deciding on the same record. However, just as the procedural shortcut must not be disfavored, courts must not rush to dispose summarily of cases—especially novel, complex, or otherwise difficult cases of public importance—unless it is clear that more complete factual development could not possibly alter the outcome and that the credibility of the witnesses' statements or testimony is not at issue.

TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc., 913 F.2d 676, 684–85 (9th Cir. 1990). Plaintiffs contend that the reasonableness and necessity of granting the CUPs at issue in this case should be resolved at this time because the Court will otherwise resolve these issues on the same record after trial. Plaintiffs are incorrect.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

"Even when the expense of further proceedings is great and the moving party's case seems to the court quite likely to succeed, speculation about the facts must not take the place of investigation, proof, and direct observation." Id. In this case, the Court declines to speculate regarding defendants' proposed alternative – that plaintiffs build a dialysis center under 10,000 square feet – where evidence might yet be further developed at trial. Although plaintiffs offer evidence that the proposed QDC Las Tunas would benefit patients with ESRD, the Court must balance the benefits that would accrue to plaintiffs' patients against the City's interests in maintaining its zoning scheme without the CUPs. See Innovative Health Sys., Inc. v. City of White Plains, 931 F. Supp. 222, 239 (S.D.N.Y. 1996), aff'd in part, 117 F.3d 37 (2d Cir. 1997) (balancing the benefit to disabled clients against defendants' interests); Oxford House, Inc. v. City of Virginia Beach, Va., 825 F. Supp. 1251, 1261 (E.D. Va. 1993) ("inherent" in the reasonableness inquiry is a balancing of the competing interests). The relevant benefit to plaintiffs' patients is the marginal benefit that would accrue from the square footage and parking variances plaintiffs were denied – not, as plaintiffs argue, the benefit of QDC Las Tunas compared with leaving the Property vacant.[9] Without any evidence of what could be accomplished *within* the 10,000 square foot cap on the Property, the Court is ill-positioned to balance plaintiffs' interests against defendants'. Rather than speculate, the Court finds summary judgment inappropriate.

Plaintiffs argue that the proposed layout of QDC Las Tunas is a necessity and that anything smaller exposes people with disabilities to mortal danger. Furthermore, plaintiffs argue that federal emergency preparedness guidelines *require* them to open a second dialysis center at least the same size as QDC San Gabriel, such that they cannot comply with federal regulations by opening a new building under 10,000 square feet. The applicable regulations became effective in November 2016 and require that dialysis centers:

> [a]t a minimum, [develop] policies and procedures [to] address the following:
> . . . (6) The development of arrangements with other dialysis facilities or other providers to receive patients in the event of limitations or cessation

---

[9] Plaintiffs have not demonstrated that, for financial or other reasons, QDC Las Tunas is an all-or-nothing proposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

of operations to maintain the continuity of services to dialysis facility patients.

42 C.F.R. § 494.62(b). Notably, the regulation expressly contemplates dialysis providers making arrangements with other providers in the event of an emergency. They do not require a provider to operate its own backup facilities.

Neither party explains whether the Court's ruling should be guided by any particular interpretation of the foregoing regulation. The parties agree that if, for instance, an earthquake should force QDC San Gabriel to partially or completely shut down, QDC San Gabriel must make arrangements to ensure its patients can continue to receive their lifesaving care elsewhere. Dr. Sakhrani claims that QDC Las Tunas "had to be" 12,285 square feet in order to provide a "comparable" number of treatment slots as provided by QDC San Gabriel. Sakhrani Decl. ¶ 29. However, the parties disagree about whether it is necessary for QDC Las Tunas to accommodate the same number of treatment spaces as QDC San Gabriel.[10]

Regarding the practical benefit of having the same provider operate two mutually-supporting dialysis centers rather than make arrangements with other providers, Dr. Sakhrani claims that "[b]ased on my experience and research, the risk of skipping dialysis treatments during an emergency is reduced where the dialysis patient is familiar with the alternative back-up facility and the individuals who would provide care for them." Sakhrani Decl. ¶ 25. However, Dr. Sakhrani must explain the basis of the foregoing expert opinion if it is to be properly considered. More importantly, QDC San Gabriel operates at nearly full capacity during virtually all hours of the day. Since plaintiffs expect QDC Las Tunas to do the same once it opens, it is unclear how one facility might, in an emergency, simultaneously provide dialysis to all of the patients from both facilities. The record appears to suggest that arrangements with other providers may still be necessary in an emergency.

Furthermore, Dr. Sakhrani's opinion about the benefits of operating both facilities instead of making arrangements with other providers is unconnected to the specific square footage variance sought by QDC Las Tunas. The evidence presently before the

---

[10] Although neither party addresses the issue, the proposed QDC Las Tunas has one more treatment space than QDC San Gabriel, presumably impacting its square footage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-01756-CAS (PLAx) | Date | March 20, 2017 |
|---|---|---|---|
| Title | DR. LAKHI SAKHRANI ET AL. V. CITY OF SAN GABRIEL ET AL. | | |

Court provides little basis for evaluating the practical benefit of an additional 2,285 square feet in the event of an emergency at QDC San Gabriel.  Plainly, more treatment spaces would be more valuable in an emergency, but the ADA does not require the City to accommodate any and all possible treatment facilities of any size.  As noted above, to evaluate the reasonableness of the modifications plaintiffs seek, the Court must balance the benefits of the CUPs and the costs to the City.  Insofar as federal regulations do not appear to *require* QDC Las Tunas to be as large as QDC San Gabriel, the Court declines to speculate about the marginal emergency-preparedness benefits that would accrue from the CUPs as compared to a dialysis center under 10,000 square feet.

There is no absolute right to summary judgment.  Schwarzer et al. § 14:338.  Although defendants do not have a right to a jury trial on this matter and the case will proceed to a bench trial, the Court has determined that the best course is to empanel an advisory jury nonetheless.  Dkt. 131.  That finding makes it especially inappropriate for the Court to determine the reasonableness of the CUP applications prior to trial.  A trial court may deny summary judgment where "there is reason to believe that the better course would be to proceed to a full trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Here, the evidence supports competing inferences and the evidence offered by plaintiffs does not address the marginal benefit of the CUPs as compared to the existing zoning regime.  The reasonableness and necessity of the CUPs is a fact-intensive inquiry, but the evidence offered by plaintiffs is silent regarding key facts underlying their claim for reasonable accommodation.  Given the complexity of the factual and legal questions presented by plaintiffs' reasonable accommodation claim, the Court concludes that it would be better resolved through a trial on the merits and before an advisory jury.

Plaintiffs' motion for partial summary judgment is **DENIED**.

## V. CONCLUSION

Plaintiffs' motion for partial summary judgment with respect to their reasonable accommodation claim is **DENIED**.

IT IS SO ORDERED.

|  | 00 | 16 |
|---|---|---|
| Initials of Preparer | CMJ | |